# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**March 6, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**In Re: H.S.**

**No. 13-0486  (Kanawha County 12-JA-159)**

### MEMORANDUM DECISION

The respondent father below and petitioner herein, C.S.[1] (hereinafter "father"), appeals from an order entered April 26, 2013, from the Circuit Court of Kanawha County. By that order, the circuit court terminated the father's parental rights and placed the minor child in the permanent custody of the mother.[2]  On appeal to this Court, the father argues that the circuit court erred and asks that his parental rights be reinstated.  The West Virginia Department of Health and Human Resources (hereinafter "WVDHHR") agrees with the circuit court's termination of the father's parental rights.  The guardian *ad litem* (hereinafter "guardian"), on behalf of the minor child, does not fully concur with the circuit court's disposition of the case.  The guardian is clear that he believes termination of the father's parental rights was correct.  However, the guardian departs from the circuit court in his belief that the circuit court should have considered post-termination visitation and requests that the case be remanded for that purpose.  Based on the parties' arguments, the record designated for our consideration, and the pertinent authorities, we affirm the rulings made by the circuit court.

The action before this Court was timely perfected, and the appendix record accompanied the petition.  Based upon the parties' written submissions and oral arguments, the portions of the record designated for our consideration, and the pertinent authorities, we find that the circuit court was correct in terminating the father's parental rights to the minor child.  Accordingly, we affirm the underlying circuit court order.  This Court further finds that this case presents no new or significant questions of law and, thus, will be disposed of

---

[1]"We follow our past practice in juvenile and domestic relations cases which involve sensitive facts and do not utilize the last names of the parties."  *State ex rel. W. Va. Dep't of Human Servs. v. Cheryl M.,* 177 W. Va. 688, 689 n.1, 356 S.E.2d 181, 182 n.1 (1987) (citations omitted).

[2]The mother was a respondent in the underlying action, the result of which was the mother being awarded permanent custody of the minor child; she is not a party to the instant proceeding and did not file responsive pleadings herein.

through a memorandum decision as contemplated by Rule 21 of the Revised Rules of Appellate Procedure.

The underlying facts of this case began with the WVDHHR's filing of a petition for abuse and neglect on July 3, 2012. In the petition, it was alleged that the father sexually abused and neglected the child. The basis for the allegation was a disclosure the child made to a therapist that the father "touched her pee-pee" and that she does not like going to visit her father's house.

The preliminary hearing was held July 9, 2012. Marta Gillespie, the therapist to whom the child made the disclosure, testified that the child's disclosure was made to her on two occasions: once at the child's home during play therapy and once when she visited the child at school. The child told her therapist that the father would take her out of her grandparent's bed at night afer they had all gone to sleep, and he would carry her to another room and touch her "pee pee." The child motioned to her privates and said she wished her father would not touch her there. Further, Ms. Gillespie testified that the child begged her not to send her back to her father's house and asked Ms. Gillespie to protect her. Ms. Gillespie testified that she had no indication in her meetings with the child that would lead her to think the child was being prompted or induced to tell her anything.

Thereafter, at the adjudicatory hearing on August 9, 2012, Ms. Gillespie again testified and stated that she had continued to meet with the child on a regular basis for therapy. At the most recent session, a week prior to the adjudicatory hearing, the child said that her father had not touched her privates. However, the child still stated that she did not want to go visit her father or to stay the night at his home. The minor child then declined to address the issue further and answered continued questions with "I don't know." At the conclusion of the hearing, the circuit court found that the evidence was clear and convincing that the child was abused and neglected by the father, and granted supervised visitation based on the guardian's request and the child's tender age of five years.

On October 15, 2012, the adjudicatory order was entered with the following findings by the circuit court: "1. That [the child] has disclosed in therapy that her father touches her 'pee pee[,]' [and] 2. [The child] has further disclosed that she does not like her 'pee pee' being touched and that she does not like going to her father's house." The WVDHHR's status report from October 1, 2012, had recommended termination of the father's parental rights and for the child to be placed in the mother's custody. The guardian,

2

however, moved for the termination of the mother's parental rights, which the circuit court denied.[3]

Thereafter, on April 26, 2013, the termination order was entered. In so doing, the circuit court found that the father had not followed through with a reasonable family case plan or other rehabilitative services, nor had he made efforts to rectify the circumstances that led to the filing of the petition. The circuit court terminated the father's parental rights and ordered permanent placement of the child with her mother. The father appeals to this Court.

Generally, in the realm of an abuse and neglect case,

[a]lthough conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. pt. 1, *In the Interest of: Tiffany Marie S.,* 196 W. Va. 223, 470 S.E.2d 177 (1996). Mindful of the applicable standards, we proceed to consider the parties' arguments.

---

[3]The mother and father had been the subject of two previous petitions, which eventually were dismissed. As a result of those previous petitions, which are not part of this appeal, the mother received services. The testimony at the hearings stated that the mother complied and excelled as a result of the offered services and that there were no current complaints. The petition presently before this Court originally named the mother as a respondent based on her inability to provide organized and appropriate care; however, the mother excelled at the offered services, and the WVDHHR altered its request and asked for the mother to be granted full custody of the child. The guardian disagreed with placing the child with the mother; however, no action was taken to appeal the lower court's ruling, and it is not a question that is before this Court.

3

On appeal to this Court, the father assigns error to the circuit court's termination of his parental rights. The father asserts that allegations contained in the petition were unsupported by evidence. Specifically, he contends that the WVDHHR failed to prove that he touched the child inappropriately. While the guardian appears to agree that the father's parental rights should be terminated, the guardian disagrees with the circuit court's disposition of the case in that the guardian believes that the lower court failed to consider a less restrictive alternative and, therefore, asks this Court to remand the case for a consideration of post-termination visitation. Contrarily, the WVDHHR argues that the evidence, through the child's disclosures to the therapist, was clear and convincing proof that the father abused the child.

As in all cases involving children, this Court holds paramount the best interests of the child, while also balancing a parent's right to his or her child. *See* Syl. pt. 3, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children."). *See also Michael K.T. v. Tina L.T.*, 182 W. Va. 399, 405, 387 S.E.2d 866, 872 (1989) ("[T]he best interests of the child is the polar star by which decisions must be made which affect children[.]" (citation omitted)). "Though constitutionally protected, the right of the natural parent to the custody of minor children is not absolute and it may be limited or terminated by the State, as *Parens patriae*, if the parent is proved unfit to be entrusted with child care." Syl. pt. 5, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973).

The father argues that there was a lack of evidence to support the circuit court's termination of his parental rights. In this regard we have recognized that the allegations of abuse or neglect must be shown by clear and convincing evidence. *See* Syl. pt. 3, in part, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995) ("W. Va. Code, 49-6-2(c) . . . requires . . . in a child abuse or neglect case, [the petitioner] to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing proof.'" (internal citations omitted)). The lower court found there was clear and convincing evidence that the father sexually abused the child. The evidence, specifically, was that the child spontaneously disclosed to the therapist, on two occasions, that she had been sleeping with her grandfather and grandmother and that her father took her out of the bed in the middle of the night and took her to the other room and touched her "pee pee." The therapist stated that the child motioned toward her private parts during these disclosures. Further, the evidence disclosed that the child begged not to be sent back to her father's house. Significantly, the therapist indicated that she did not think the child was being prompted or influenced to make such statements. The occurrences when the child refused to talk or stated "no" or "I don't know" to inquiries concerning the relationship with her father were explained as instances when the child was confused, not that the child was recanting her disclosures. Based on the child's

4

disclosures to her therapist, the child's fear attached with visiting her father, and the fact that contact with the father caused the child's behavior to regress, the father's parental rights were terminated.

We are cognizant that termination of parental rights is an extreme, but sometimes necessary, step to protect a child when there is no hope that the offending parent's behavior will change. *See* Syl. pt. 4, *In the Matter of Jonathan P.*, 182 W. Va. 302, 387 S.E.2d 537 (1989) ("'Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va. Code, 49–6–5 [1977] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va. Code, 49–6–5(b) [1977] that conditions of neglect or abuse can be substantially corrected.' Syllabus Point 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)."). The record in the present case reveals that the father, because of medication he takes for injuries, cannot care for the child on his own. He lives with his parents; therefore, the child was cared for by the paternal grandparents much of the time when she was with her father. The grandmother's care was found to be troubling in one of the previous petitions, and the father was specifically ordered that the child was not allowed to be with his mother, the child's grandmother. Not only did the father not follow through with this order, he left the child alone with her grandmother. Significantly, the underlying testimony was that the child's severe behavioral issues improved under the mother's care and regressed considerably after visits with her father. Because this case represents the third petition that had been filed regarding this child, it is clear to this Court that the father has been provided numerous opportunities to comply with court orders and that his noncompliant behavior illustrates his lack of respect for such orders that were put into place to protect his child. Significantly, the father has not admitted to sexually abusing the child. There are no services to be provided to a sexual abuser when the abuser fails to admit the actions. *See West Virginia Dep't of Health & Human Res. v. Doris S.*, 197 W. Va. 489, 498, 475 S.E.2d 865, 874 (1996) (stating that failure to acknowledge existence of problem results in making problem untreatable and improvement period an exercise in futility at child's expense).

Despite the finding of sexual abuse of the child by the father, the guardian seeks a remand of this case for a consideration of post-termination visitation. We find this request in contravention of the evidence that the child's behavior regressed markedly after visits with her father. *See* Syl. pt, 5, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995) ("When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The

5

evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest."). In *Honaker v. Burnside*, 182 W. Va. 448, 452-53, 388 S.E.2d 322, 326 (1989), we stated that "a child's best interests must be the primary standard by which his rights to continued contact with other significant figures in his life are to be determined." In the instant case, it has been shown that the father has an inability to provide proper care on his own to the child because of medications needed by the father. The father's attempt to parent the child included leaving the child with the child's grandparent, despite the lower court's order that the child not be alone with the grandparent. Importantly, the child disclosed to her therapist sexual abuse by her father, which the circuit court found was proved by clear and convincing evidence. Under the facts of this case, there is no basis upon which to remand the case for a determination of post-termination visitation, and we decline to do so.

For the foregoing reasons, we affirm the circuit court's termination of the father's parental rights to the minor child at issue herein.

Affirmed.

**ISSUED: March 6, 2014**

**CONCURRED IN BY:**

**Chief Justice Robin Jean Davis**
**Justice Brent D. Benjamin**
**Justice Margaret L. Workman**
**Justice Menis E. Ketchum**
**Justice Allen H. Loughry II**

6